## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA SIMLER, | |
| *Plaintiff,* | Civil Action No. |
| v. | 3:02 CV 01565 (JCH) |
| EDWARD STRUZINSKY and BRANFORD BOARD OF EDUCATION | |
| *Defendant*s. | JANUARY 16, 2004 |

### LOCAL RULE 56 STATEMENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DATED JANUARY 16, 2004

Pursuant to Fed.R.Civ.P. 56 and D.Conn.L.R. 56, the defendants, EDWARD STRUZINSKY and BRANFORD BOARD OF EDUCATION, submit the following statement of material facts not in dispute in support of their Motion for Summary Judgment dated January 16, 2004. Affidavits and other admissible evidence are attached as exhibits.

1.      The  plaintiff, Donna Simler, is an adult resident of the State of Connecticut residing in Guilford. **Complaint, ¶1.**

2.      Simler commenced this lawsuit on September 4, 2002. **Complaint.**

3.      The Town of Branford Board of Education (the "Board of Education"), a municipal corporation organized and existing under the laws of the State of Connecticut is named as a defendant in this action. **Complaint, ¶5.**

4.      Edward Struzinsky ("Struzinsky"), a member of the Board of Education from November 1991 until November 1999 and its Chairman from November 1997 until November 1999, is a defendant and is sued in is individual capacity only. **Complaint, ¶4; Exhibit F, Aff. Struzinsky, ¶4.**

5.    From July 1992 until the present, Dr. Bruce Storm ("Dr. Storm") has been employed as the Superintendent of the Town of Branford Board of Education. Dr. Storm is not a defendant. **Exhibit B, Aff. Storm, ¶4.**

6.    From July 1997 to September 2000, Dr. Paul Smotas was employed as the Assistant Superintendent of the Town of Branford Board of Education. Dr. Smotas is not a defendant. **Exhibit A, Aff. Smotas, ¶4.**

7.    In May 1998, Dr. Storm learned that Simler allegedly assaulted an ex-boyfriend and was arrested for that alleged incident. **Exhibit B, Aff. Storm, ¶6.**

8.    On May 22, 1998, Dr. Storm suspended Simler with pay pending the results of an internal investigation into the alleged assault. **Exhibit B, Aff. Storm, ¶7.**

9.    The Board of Education conducted an independent investigation, hiring separate counsel to conduct such investigation. **Exhibit B, Aff. Storm, ¶8, Att. 1.**

10.    On September 2, 1998, as a result of the investigation, Simler was informed that the Branford Board of Education would commence termination proceedings against her. **Exhibit B, Aff. Storm, ¶9, Att. 2.**

11.    In lieu of the termination proceedings, the Branford Board of Education and Simler entered into a separation agreement. **Exhibit B, Aff. Storm, ¶10, Att. 3.**

12.    The separation agreement called for Simler to be placed on paid leave through January 31, 1999. **Exhibit B, Aff. Storm, ¶11, Att. 3.**

13.    Pursuant to the agreement, Simler was placed on unpaid leave from February 1, 1999, through June 30, 1999. **Exhibit B, Aff. Storm, ¶12, Att. 3.**

14.    Simler was required to and did submit an irrevocable letter of resignation dated November 12, 1998, effective June 30, 1999, upon executing the separation agreement. **Exhibit B, Aff. Storm, ¶13, Att. 4.**

15.    The separation agreement requires that the Branford Board of Education pay Simler's contribution to the Teachers' Retirement Board ("TRB") from February 1, 1999, through June 30, 1999. **Exhibit B, Aff. Storm, ¶14.**

16.    The agreement indicated:  "Under no circumstances shall the Board pay the teacher's TRB contribution after June 30, 1999." **Exhibit B, Aff. Storm, ¶15, Att. 3.**

17.    Additionally, the separation agreement states:  "Teacher acknowledges and agrees that she is voluntarily resigning her employment with the Board in accordance with this Agreement.  The teacher agrees that other than the provisions set forth in this Agreement, no further monies, salary or compensation whatsoever will be paid to the teacher or are owed to the teacher by the Board, including its present or former agents, employees, attorneys, commissioners, elected or appointed officials." **Exhibit B, Aff. Storm, ¶16, Att. 3.**

18.    On March 24, 1999, the Branford Board of Education authorized an early retirement incentive (the "Plan") for all eligible professional staff ("Participants"), providing for the purchase of an additional three years of service for those who chose to take advantage of the incentive and consistent with the statutes and regulations established by the legislature of the State of Connecticut and the State of Connecticut Teacher's Retirement Board for that type of program. **Exhibit A, Aff. Smotas, ¶6; Exhibit D, BOE Minutes.**

19.    As requested by the Superintendent, Dr. Bruce Storm, and the Board of Education, Dr. Smotas prepared a financial analysis of offering the Plan to eligible Participants. **Exhibit A, Aff. Smotas, ¶7.**

20.    On March 26, 1999, Dr. Smotas issued a Notice (the "Notice") to all teachers and administrators concerning the Plan. **Exhibit A, Aff. Smotas, ¶8, Att. 1.**

21.    The Notice stated that the Branford Board of Education would purchase three years of additional service for all teachers/administrators who qualify for the Plan. **Exhibit A, Aff. Smotas, ¶9.**

22.    The Notice also stated qualification or eligibility is based upon age (attainment of age 50 prior to July 1, 1999) and participation limits imposed by the Branford Board of Education. **Exhibit A, Aff. Smotas, ¶10.**

23.    The Notice also stated state law allows school boards the discretion to limit the number of employees for whom it will purchase service to a specific percentage of the work force based upon years of service in Branford. **Exhibit A, Aff. Smotas, ¶11.**

24.    The Notice also stated the teachers/administrators that they had until May 27, 1999 to apply to participate in the Plan. **Exhibit A, Aff. Smotas, ¶12.**

25.    The Notice also stated that once all applications had been received, the Branford Board of Education will determine the percentage of eligible employees (the "Participants") who will be approved under the retirement plan. **Exhibit A, Aff. Smotas, ¶13.**

26.    After all the applications for the Plan were received, Dr. Smotas determined the retirement costs to the Branford Board of Education for all eligible Participants and the cost to replace those Participants. **Exhibit A, Aff. Smotas, ¶14.**

27.    After the cost analysis, Dr. Smotas determined that limiting the Plan to the 16 most senior Participants would best serve the financial interests of the Branford Board of Education. **Exhibit A, Aff. Smotas, ¶15.**

28.    On June 1, 1999, Dr. Smotas submitted the Plan's financial data to the Branford Board of Education at a duly noticed meeting and recommended that the Board approve the Plan limited to the 16 most senior Participants. **Exhibit A, Aff. Smotas, ¶16.**

29.    At the June 1, 1999 meeting, the Board approved the Plan, limited to the 16 most senior Participants with Branford experience who applied. **Exhibit A, Aff. Smotas, ¶17; Exhibit D, BOE Minutes.**

30.    The determination of the number of Participants was made on June 1, 1999, and was based on the cost analysis, which would best serve the financial interests of the Branford Board of Education. **Exhibit A, Aff. Smotas, ¶18; Exhibit F, Aff. Struzinsky, ¶18.**

31.    Including any other Participants beyond the 16 most senior would have placed the Plan in financial jeopardy. **Exhibit A, Aff. Smotas, ¶19; Exhibit F, Aff. Struzinsky, ¶19.**

32.    There was no other basis in the determination other than the financial implication of adding additional Participants to the Plan. **Exhibit A, Aff. Smotas, ¶20; Exhibit F, Aff. Struzinsky, ¶20.**

33.    The financial implications were determined by comparing the retirement cost of the group of Participants to the replacement costs to the continued employment costs of those Participants. **Exhibit A, Aff. Smotas, ¶21.**

34.    Including any Participant beyond 16 most senior would have eliminated the majority of any cost-savings resulting from the retirement. **Exhibit A, Aff. Smotas, ¶22; Exhibit F, Aff. Struzinsky, ¶22.**

35.    When Dr. Smotas discussed the financial implications of the Plan with the Board, the identity of the potential participants was not discussed. **Exhibit A, Aff. Smotas, ¶23; Exhibit F, Aff. Struzinsky, ¶24.**

36.    On June 2, 1999, Dr. Smotas notified the plaintiff, Donna Simler, that the 16 most senior Participants who applied were accepted and her level of experience did not meet the criteria for approval. **Exhibit A, Aff. Smotas, ¶24, Att. 2.**

37.    Simler voluntarily resigned from employment with the Board. **Exhibit D, Dep. Simler, pp. 28-9.**

38.    In connection with the settlement in lieu of termination, Simler agreed not to seek reemployment with the Board and the Board had no obligation to re-employ here in the future. **Exhibit C, Dep. Simler, pp. 34-6, 36-7.**

39.    In connection with the settlement in lieu of termination, Simler was required to submit an irrevocable letter of resignation, a document she submitted on November 12, 1998. **Exhibit C, Dep. Simler, p. 36.**

40.   The Board had no obligation to re-employ Simler at any future time. **Exhibit C, Dep. Simler, pp. 36-7.**

41.   Simler was on paid administrative leave from May 1998 until January 31, 1999. **Exhibit C, Dep. Simler, p. 37.**

42.   Simler was told she was being investigated for discipline, up to and including termination. **Exhibit C, Dep. Simler, p. 38.**

43.   Simler admits she had notice of termination proceedings. **Exhibit C, Dep. Simler, p. 39.**

44.   Simler admits she had legal counsel during the termination proceedings. **Exhibit C, Dep. Simler, p. 40.**

45.   Simler received notice of the proposed early retirement incentive Plan. **Exhibit C, Dep. Simler, p. 41.**

46.   Simler received the Notice, including all the terms and conditions of the Plan. **Exhibit C, Dep. Simler, p. 42.**

47.   Simler admits the Notice did not state that everyone who applied would be eligible for the Plan. **Exhibit C, Dep. Simler, pp. 44-5.**

48.   Simler applied for the Plan and was rejected. **Exhibit C, Dep. Simler, p. 47.**

49.   Simler knew of the rejection on June 2, 1999. **Exhibit C, Dep. Simler, p. 48.**

50.   Simler admits the 16 participants in the Plan had more seniority with the Board than she did. **Exhibit C, Dep. Simler, p. 49.**

51.   Simler applied for the Plan after she had already resigned from employment and after she had entered into the settlement agreement in lieu of termination. **Exhibit C, Dep. Simler, pp. 50-1.**

52.   Simler knew the Board wanted to save money by offering an early retirement incentive plan. **Exhibit C, Dep. Simler, p. 51.**

53.  Prior to the commencement of this lawsuit, Simler had no knowledge or evidence of which individuals applied for the Plan. **Exhibit C, Dep. Simler, p. 52.**

54.  Simler has no knowledge or evidence if any individual's name was available to the Board when eligibility the Plan was discussed and approved. **Exhibit C, Dep. Simler, p. 52.**

55.  Simler has no knowledge or evidence of how the Board determined eligibility for the plan and she has no knowledge or evidence of the financial implications of the plan itself, financial if any individual's name was available to the Board when eligibility the Plan was discussed and approved. **Exhibit C, Dep. Simler, p. 53.**

56.  Simler knew in September 1999 that the Board had requested the State to revoke her teaching certificate. **Exhibit C, Dep. Simler, p. 60.**

57.  Simler admits the State of Connecticut Commissioner Department of Education, not the Board of Education, brought a complaint to revoke her certification. **Exhibit C, Dep. Simler, p. 60-1.**

58.  Simler admits she had administrative hearings before the State of Connecticut Board of Education, not the Branford Board of Education. **Exhibit C, Dep. Simler, p. 61.**

59.  Simler appealed the decision of the State of Connecticut Board of Education. **Exhibit C, Dep. Simler, p. 61.**

60.  Simler admits all the Branford Board of Education did was request the Commissioner to look into revocation. **Exhibit C, Dep. Simler, p. 64-67.**

61.  Simler admits the Commissioner did the rest. **Exhibit C, Dep. Simler, pp. 68-9.**

62.  Simler admits to receiving the full panoply of due process from the Commissioner. **Exhibit C, Dep. Simler, p. 59-65.**

63.  Simler admits that she was not terminated because she reached a settlement agreement with the Board of Education prior to termination. **Exhibit C, Dep. Simler, pp. 69-70.**

64.    Simler has no evidence that individuals with less seniority then her participated in the Plan. **Exhibit C, Dep. Simler, p. 82.**

65.    Simler has no evidence of who applied for the Plan, how many individuals applied for the plan, and she has no idea how the Branford Board determined the financial considerations of the Plan. **Exhibit C, Dep. Simler, pp. 89-92**

66.    Simler has no knowledge or evidence of what Chairman Struzinsky or the Branford Board of Education did or did not do with regard to the submission of the request for revocation of her teaching certification. **Exhibit C, Dep. Simler, pp. 93-4.**

67.    Simler admits presenting her version of the events to the Commissioner in connection with the revocation process. **Exhibit C, Dep. Simler, pp. 93-4.**

68.    Simler admits she had an opportunity to call witnesses, present evidence, and cross examine the witnesses against her in connection with the revocation process. **Exhibit C, Dep. Simler, pp. 95-7.**

69.    Simler admits Von Hofe was terminated because he lacked a valid teaching certificate. **Exhibit C, Dep. Simler, pp. 104-5**

70.    Simler has no evidence that Chairman Struzinsky did anything concerning the revocation of her teaching certificate or the adoption of the Ohio Plan. **Exhibit C, Dep. Simler, pp. 111-12.**

71.    The Branford Board of Education had no power to revoke Simler's teaching certificate or otherwise limit her employment anywhere in Connecticut, except for the Branford Public Schools. **Exhibit F, Aff. Struzinsky, ¶12.**

72.    In September 1999, the Board of Education voted to request that the Commissioner of Education for the State of Connecticut investigate and revoke Simler's teaching certification. **Exhibit B, Aff. Storm, ¶17; Exhibit F, Aff. Struzinsky, ¶9.**

73. Chairman Struzinsky signed the request to revoke to the Commissioner of Education. **Exhibit B, Aff. Storm, ¶18; Exhibit F, Aff. Struzinsky, ¶10.**

74. The Board authorized Dr. Storm, as Superintendent of Schools, to submit the materials from the Branford Board of Education's investigation to the Commissioner of Education for the State of Connecticut. **Exhibit B, Aff. Storm, ¶19; Exhibit F, Aff. Struzinsky, ¶11.**

75. During his employment as teacher for the Branford Board of Education, Jerry Friedman was accused of assaulting a student on October 20, 2000 during school hours on school property. **Exhibit B, Aff. Storm, ¶20, Att. 5.**

76. Friedman was placed on paid administrative leave while the matter was investigated by Dr. Storm. **Exhibit B, Aff. Storm, ¶21.**

77. Dr. Storm conducted an investigation of the incident and determined that questions of fact existed whether Friedman's conduct was not an assault but that Friedman acted in self-defense. **Exhibit B, Aff. Storm, ¶22.**

78. Dr. Storm's investigation determined that Friedman's conduct did not warrant the initiation of termination proceedings. **Exhibit B, Aff. Storm, ¶23.**

79. In light of all the evidence, Dr. Storm suspended Friedman without pay for three (3) days. **Exhibit B, Aff. Storm, ¶24.**

80. During his employment as a teacher for the Branford Board of Education, Harold Von Hofe was arrested on December 4, 2001, along with members of his family, for allegedly operating a marijuana factory from his home. **Exhibit B, Aff. Storm, ¶25.**

81. Upon learning of his arrest, Dr. Storm suspended Von Hofe with pay pending an internal investigation. **Exhibit B, Aff. Storm, ¶26.**

82. Branford Board of Education hired the same counsel who investigated Simler to investigate the allegations against Von Hofe. **Exhibit B, Aff. Storm, ¶27.**

83.    During the investigation into Von Hofe, his teaching certification expired. **Exhibit B, Aff. Storm, ¶28.**

84.    The investigation was not completed into Von Hofe's conduct because the expiration of his teaching certificate was sufficient for automatic termination. **Exhibit B, Aff. Storm, ¶29.**

85.    Due to the expiration of his teaching certificate, Dr. Storm terminated Mr. Von Hofe on April 29, 2002. **Exhibit B, Aff. Storm, ¶30.**

86.    On January 10, 2001, the Commissioner of the Education of the State of Connecticut found probable cause to institute revocation proceedings against Simler and referred the matter to a hearing officer to conduct the necessary hearings and issue a proposed decision. **Exhibit E.**

87.    After five dates of hearings and numerous post-hearing briefs submitted by the Commissioner and Simler, the hearing officer issued his proposed decision on December 19, 2001. **Exhibit E.**

88.    The Hearing Officer's decision indicates that the hearing officer's proposed decision granted the first count of the administrative complaint finding Simler professionally unfit to perform her duties in accordance with Connecticut General Statutes §10-145b(m) and on the second count finding Simler unqualified to possess a certificate for other due and sufficient cause in accordance with Connecticut General Statutes §10-145b(m). **Exhibit E.**

89.    The third count found Simler unqualified to possess a certificate for other due and sufficient cause in accordance with violation of §10-145d-400a(c)(1)(A) of the Regulations of Connecticut State Agencies which states: "The professional teacher, in full recognition of his or her obligation to the profession of teaching, shall conduct himself as a professional realizing that his or her action reflects directly upon the status and substance of the profession." **Exhibit E.**

90.     The fourth count found Simler unqualified to possess a certificate for other due
        and sufficient cause in accordance with of §10-145d-400a(c)(2)(C) which states:
        "The professional teacher, in full recognition of his or her obligation to the
        profession of teaching, shall not engage in any misconduct which would impair
        his or her ability to teach." **Exhibit E.**

91.     The fifth count found Simler unqualified to possess a certificate for other due
        and sufficient count in accordance with §10-145d-400a (c)(1)(D) of the Regulations of
        Connecticut State Agencies which states:  "The professional teacher, in full
        recognition of his or her obligation to the teaching professional shall strive to
        exercise the highest level of professional judgment." **Exhibit E.**

92.     After a public hearing on February 6, 2002, the Connecticut Board of Education
        adopted the hearing officer's recommended decision and all of Simler's
        Connecticut teaching certificates were revoked. **Exhibit E.**

93.     On February 26, 2002, Simler moved for reconsideration of the Connecticut
        Board of Education's revocation of her teaching certificates. **Exhibit E.**

94.     On March 6, 2002, the Connecticut Board of Education granted the petition for
        reconsideration limited to the grounds that the decision was based upon
        allegations not contained in the administrative complaint and that the facts did
        not bear upon the allegations contained in the administrative complaint. **Exhibit
        E.**

95.     The Connecticut Board of Education indicated that the Commissioner should file
        a revised administrative complaint and the matter was remanded to the hearing
        officer for the limited purpose of conducting additional proceedings related to any
        new allegations. **Exhibit E.**

96.     The Commissioner filed an amended complaint adding additional counts
        specifying from 1993 through 1998 that Simler engaged in confrontational
        conduct with students and parents, as well as engaged in continued in-school
        and out-of-school confrontational conduct. **Exhibit E.**

97.  The amended complaint alleged that such conduct demonstrates that Simler was unqualified to possess a teaching certificate and she was professionally unfit to perform her duties; failed to conduct herself as a professional realizing that her actions reflected directly upon the status and substance of the profession; engaged in conduct which would impair her ability to teach; and failed to recognize respect and uphold the dignity and worth of students as individual human beings. **Exhibit E.**

98.  On December 16, 2002, the hearing officer entered his supplemental finding of facts and recommended decision. **Exhibit E.**

99.  The hearing officer found that the only evidence offered by Simler concerning her actions concerning the assault of her former boyfriend was that her not guilty verdict was evidence of "exoneration of any claim of striking him." **Exhibit E.**

100.  The hearing officer's supplemental finding of facts was that no changes were warranted concerning the assault from his previous decision. **Exhibit E.**

101.  Additionally, the hearing officer's supplemental finding of facts found that the evidence submitted by Simler did not warrant a change of any finding of facts concerning her confrontational dealings with students. **Exhibit E.**

102.  The hearing officer particularly noted that "if anything, her testimony, especially under cross- examination, demonstrated a confrontational attitude."  The hearing officer found as additional facts only that Simler entered into a separation agreement, voluntarily and irrevocably resigned her position and submitted her retirement papers on June 29, 1999. **Exhibit E.**

103.  The hearing officer noted that the new allegations raised in the revised administrative complaint fully conformed to the evidence that was already submitted resulting in the finding of fact and recommended decision previously submitted to the Connecticut Board of Education. **Exhibit E.**

104.   The hearing officer did note that if he was simply presented with the allegations that Simler was not dealing "justly and considerately with students," he indicated that such conduct would not warrant revocation of her teaching certificate, but could justify termination from a specific school system. **Exhibit E.**

105.   However, as the hearing officer already found that the assault was justification for the revocation of her teaching certificate, he again recommended the decision that her certificate be revoked. **Exhibit E.**

106.   On February 5, 2003, the Connecticut Board of Education again voted to revoke her teaching certificates. **Exhibit E.**

THE DEFENDANTS,
EDWARD STRUZINSKY and
BRANFORD BOARD OF EDUCATION

/s/ John J. Radshaw, III
Thomas R. Gerarde, ct05640
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)
jradshaw@hl-law.com

## CERTIFICATION

I hereby certify that on January 16, 2004, a copy of foregoing was served by U.S. Mail, postage pre-paid to all *pro se* parties and counsel of record.

Norman A. Pattis, Esquire
WILLIAMS & PATTIS, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

/s/ John J. Radshaw, III
John J. Radshaw, III