**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

DONNA SIMLER                  :
                                 :
v.                             :       NO. 3:02CV01565(JCH)
                                 :
EDWARD STRUZINSKY AND    :
BRANFORD BOARD OF EDUCATION  :     FEBRUARY 25, 2004

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     BACKGROUND**

Donna Simler filed this action because she was punished by the defendants when she advised them she would take any and all legal remedies to challenge their decision to exclude her from participating in an early retirement incentive plan offered by the Branford Board of Education in 1999. Shortly after she raised the issue with the Board in July, 1999, the defendants requested the State Board of Education to revoke her teacher certification. Ex. 5, Ex. 6

The plaintiff was a superior educator. She never received any formal discipline in 28 years of teaching. In the fall of 1998, her most recent teacher preliminary evaluation had been excellent. Ex. 1 The preliminary evaluation was not finalized because she was placed on administrative leave before the school year ended.

Ms. Simler  agreed to retire as of June 30, 1999,  because  the Superintendant of Schools had placed her on administrative leave more than one year earlier,  in May, 1998. That month, she had been arrested for an alleged assault which was unrelated to her employment. (In June, 2000, she was acquitted of the charge.)

In March, 1999,  the Branford Board of Education offered an early retirement program, known as the "Ohio Plan". Based upon the criteria she was provided, the plaintiff believed that she qualified for the benefit, which would give her an additional three years of credit for purposes of calculating her pension. (Public school teachers do not contribute to social security and therefore her pension is her sole retirement benefit) She was told, after requesting a copy of the plan, that it was similar to one which had been offered in 1996-97. The Voluntary Early Retirement Incentive Plan which was offered at that time referred only to years of service within the state of Connecticut, and it made no reference to the length of service in Branford.  Ex. 2, p. 3.

 The plaintiff applied for the program in May, 1999. Ex. 3 She was advised on June 2, 1999,  that she did not have more than ten (10) years of teaching experience in the Branford system and therefore did not qualify for the program.  Ex. 4   She had taught previously in Orange, Connecticut. The defendants' decision-making criteria were unclear.

2

The plaintiff retained John Gesmonde, Esq. to represent her and he made inquiries about the Board's decision during the summer of 1999.  After numerous contacts with the defendants and the State Teacher Retirement Board,  John Gesmonde referred the Branford Board's decision to William Sudol, the Administrator of the Teacher's Retirement Board ("TRS") to determine why the plaintiff had been excluded.    The plaintiff is still waiting for a "final decision" for purposes of administrative appeal, on the Ohio Plan exclusion. Ex. 5 Shortly after receiving the inquiries from John Gesmonde, on September 8, 1999, the defendants requested the State Board of Education to revoke the plaintiff's teaching certificate.  Ex. 6  The plaintiff alleges that the defendants took this action in response to her challenge of their decision excluding her from the "Ohio Plan".

Defendants' action in requesting that the plaintiff's license be revoked resulted in a multi-year saga of administrative hearings in which the plaintiff represented herself, with the result that her license was revoked. She currently works at SBC Communications as a telephone operator. Ex. 12, Plaintiff's Affidavit.

The Branford Board and Edward Struzinsky could have requested revocation of the plaintiff's license as early as the fall of 1998, when they completed their "investigation" of her conduct. (Please see September 10, 1998

3

letter from Superintendent Storm to William Dolan, Esq., attached to his affidavit, Def. Ex. B)

## II.    STANDARD FOR SUMMARY JUDGMENT

When passing upon a motion for summary judgment, the district may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Tenenbum v. Williams, 193 F. 3d 581, 593 (2d Cir. 1999), cert. denied, 529 U. S. 1098 (2000). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

4

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law....The moving party is said to bear both the initial burden of production and the ultimate burden of persuasion on the motion....A nonmoving party, even though having the ultimate burden at trial, may indeed have no obligation to offer evidence supporting its own case unless the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132-33 (1st Cir. 2000).

III.    **ARGUMENT**

    A.    **Statute of Limitations**

The plaintiff has met the requirement of the statute of limitations for civil rights actions under §1983.  The defendants' action requesting revocation of her license occurred September 8, 1999; this action was filed September 3, 2002. The plaintiff is required to exhaust administrative appeals through the Teacher's Retirement Board prior to filing an action for her lost retirement benefits; Attorney Gesmonde is still waiting for a final decision from Administrator Sudol. Ex. 5

**B.    Substantive Due Process**

The plaintiff was referred by the defendants to the State Board of Education, in a request to revoke her license, based upon an arrest. The plaintiff had a spotless record, both in her school community and her home community of Guilford.

No other teacher has been treated in such a manner in the state of Connecticut.  In response to an inquiry by the Commission on Human Rights and Opportunities, the State Education Department acknowledged that no teacher had been referred for revocation unless there was some record of previous disciplinary action within the school system itself, or unless there was a criminal conviction.  Exhibit 9

The Second  Circuit has articulated the purpose and limitations of substantive due process as follows: the due process clause was intended to

6

prevent government from abusing its power, or employing it as an instrument of oppression. The clause has been held to have a substantive component that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them. A substantive due process claim based on allegedly tortious conduct by a state actor requires evidence of conduct that can properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense. Inter-port Pilots Agency v. Sammis, 14 F. 3d 133, 144 (2d Cir. 1994)

The plaintiff points to actions by the defendants which were intended to deprive her of her license and damage her reputation. In Board of Regents v. Roth, the Supreme Court suggested that a loss of employment and injury to reputation raises cognizable liberty interests. 408 U. S. 564, 573 (1972) In this situation, the defendants' action set in motion the sequence of events which deprived her of her teaching certification in Connecticut, which is clearly a property interest. There was no publicity about the plaintiff until the defendants moved to revoke her license in the fall of 1999. Ex. 12

The intentions of the defendants are a crucial element to determine whether misconduct by a state actor has crossed the line from a garden-variety tort into constitutional violation. See Collins v. City of Harker Heights, 503 U. S. 115, 127 (1992). As such, this issue is not suited for a decision on summary

7

judgment, but should be left to the jury, the fact-finder. The defendants' decision
to recommend revocation of plaintiff's license occurred shortly after she and her
attorney challenged the pension decision; an inference may reasonably be
drawn from their actions that they intended to inflict the greatest harm possible in
retaliation for her questions about their decision making process on the "Ohio
Plan" benefit.  Defendants' actions should therefore be considered to be arbitrary
and conscience-shocking in the constitutional sense.

### C.    Retaliation

"In order to defeat a motion for summary judgment addressed to a claim
of retaliation..., the plaintiff must first present sufficient evidence to make out a
prima facie case, that is, evidence sufficient to permit a rational trier of fact to
find (1) that she engaged in protected participation or opposition..., (2) that the
employer was aware of this activity, (3) that the employer took adverse action
against the plaintiff, and (4) that a causal connection exists between the
protected activity and the adverse action, i.e., that a retaliatory motive played a
part in the adverse employment action....The causal connection needed for proof
of a retaliation claim can be established indirectly by showing that the protected
activity was closely followed in time by the adverse action." Cifra v. General
Electric Co., 252 F.3d 205, 216 (2d Cir. 2001).  See Quinn v. Green Tree Credit
Corp., 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after

8

plaintiff complained to management and ten days after she filed complaint with

state human rights office established prima facie case of causal relationship);

Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001)

(discharge less than three months after complaint filed and less than one month

after service upon employer established prima facie case).

The defendants arbitrarily deprived the plaintiff of a substantial employee

benefit.  The plaintiff challenged their decision and the method they used to

exclude her from the group approved for the "Ohio Plan".  The defendants then

moved to request revocation of plaintiff's license within two (2) months of

Attorney Gesmonde's inquiries. This is sufficient circumstantial evidence to

advance a prima facie case of retaliation by the defendants.

### D.    Equal Protection

In Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000),

the Supreme Court articulated the well-established law applicable to equal

protection claims.  "Our cases," the court held, "have recognized successful

equal protection claims brought by a 'class of one,' where the plaintiff alleges that

she has been intentionally treated differently from others similarly situated and

that there is no rational basis for the difference in treatment.  See Sioux City

Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Allegheny Pittsburgh Coal

Co. v. Commission of Webster Cty., 488 U.S. 336 (1989).  In so doing, we have

explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" 120 S. Ct. at 1074-75. Citing <u>Sioux City Bridge Co.</u>, <u>supra</u>, at 445; <u>Sunday Lake Iron Co. v. Township of Wakefield</u>, 247 U.S. 340, 352 (1918). The court expressly held that it is sufficient, to state an equal protection violation, that "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. at 563. The motivation of the perpetrator is irrelevant. 528 U.S. at 565. *Cf.*, <u>Jackson v. Burke</u>, 256 F.3d 93, 97 (2d Cir. 2000) ("proof of subjective ill will is not an essential element of a 'class of one' equal protection claim"). <u>Harlen Associates v. Incorporated Village of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001).

"Before <u>Olech</u>, the Second Circuit permitted selective enforcement claims based on a 'class of one' if the plaintiff could 'show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" <u>Russo v. City of Hartford</u>, 184 F. Supp. 2d 169, 190 (D. Conn. 2002) (Hall, J.), citing <u>Harlen Associates v. Incorporated Village</u>

10

of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). "In Harlen, the Court of Appeals

assumed without so holding that a plaintiff who establishes differential treatment

could state an equal protection claim by showing 'either that there was no

rational basis for the unequal treatment received, or that the [unequal treatment]

was motivated by animus." Russo, quoting Harlen, supra, at 500; Barstow v.

Shea, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (Arterton, J.); Oneto v. Town of

Hamden, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001) (Arterton, J.); Giordano v.

City of New York, 274 F.3d 740, 751 (2d Cir. 2001).

No Board of Education in Connecticut has ever requested that a teacher's

license be revoked unless there was school related misconduct or a criminal

conviction. Ex. 7  The plaintiff is a class of one and there is no rational basis for

the defendants' decision to request that her license be revoked in September,

1999.

### E.  IMMUNITY

#### 1. OHIO PLAN

The Branford Board of Education used a results oriented approach in

adopting the Ohio Plan in 1999. As William Sudol, administrator of the Teachers

Retirement Board noted in his letter of November 8, 1999 (Ex. 5), the defendants

never arrived at a percentage of eligible members to participate.  The Board

never took a vote on such a percentage; instead, they voted to accept the

sixteen (16) most senior teachers and administrators who applied. Ex. 11

Statutory requirements were ignored by the defendants. Ex 8

     The defendants are correct  that federal, state, and regional legislators

are entitled to absolute immunity from civil liability for their legislative actions.

Bogan v. Scott-Harris, 523 U.S. 44, 46, (1998); Tenney v. Brandhove, 341 U.S.

367, 376 (1951).  Local officials acting in a legislative capacity also receive this

benefit.  Bogan, 523 U.S. at 46; Carlos v. Santos, 123 F.3d 61, 66 (2d Cir.1997),

and it applies to claims for declaratory relief, injunctive relief, and damages.

Supreme Court of Virginia v. Consumers Union of United States, Inc., 446 U.S.

719, 732- 33 (1980).

     The question is whether the defendants' action in excluding the plaintiff

from the Ohio Plan was an administrative or legislative act. The test for

determining whether an act is legislative "turns on the nature of the act, rather

than on the motive or intent of the official performing it." Bogan v. Scott-Harris,

523 U.S. 44, 54 (1998); Forrester v. White, 484 U.S. 219, 224, 227, (1988). The

plaintiff claims that the defendants did not follow the prescribed method to

determine eligible participants and that the proposal was designed to leave her

as the only 1999 applicant excluded from the program.  She therefore defines

their action as an administrative act, and not as a legislative action affecting a

class of employees. Discretionary personnel decisions do not give rise to immunity.  Forrester, 484 U.S. at 229-30.

      2.   LICENSE REVOCATION REQUEST

     In order to decide whether the defendants have the benefit of qualified immunity, the Court  must determine whether plaintiff has alleged a violation of a constitutional right. Then it must consider whether the violated right was clearly established at the time of the conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). If  plaintiff had a clearly established, constitutionally protected right that was violated by the actions of the Board, she must also demonstrate that defendants' actions were not objectively reasonable.  X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir.1999).

     The Board was aware of the state regulations governing revocation of a teacher's certification, they knew that the criteria for reliance upon criminal conduct required a conviction, not simply an arrest.  Sec. 10-145d-612, Regulations, State Board of Education. p. 138  (EX. 9) The defendants decision to request license revocation shortly after the plaintiff questioned their decision on the Ohio Plan does not fall into a gray zone, but amounts to a clear deprivation of a property right.

      The defendants' decision was not objectively reasonable, because the plaintiff had not been convicted of a crime and she had never been disciplined by

13

her employer. In addition, the timing of the request is suspicious, because it was made approximately one year after the defendants completed their own internal investigation.  Until the plaintiff challenged their decision on the pension benefit, the defendants had made no move to request revocation of her license.   Wilson v. Layne, 526 U.S. 603, 609, (1999); X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir.1999).

In addition, the defendants' decision to request revocation of the plaintiff 's teaching certificate was not a legislative action, but was an administrative decision.

Therefore the defendants cannot claim the shield of legislative or qualified immunity.

## IV.    CONCLUSION                     _____

_____Wherefore, for the reasons set forth above, the plaintiff respectfully requests that the defendants' Motion for Summary Judgment be denied.___

_____


_____THE PLAINTIFF


                          _____

14

KATRENA ENGSTROM
Fed. Bar No. Ct09444
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
(203) 562-9931
FAX: (203) 776-9494
Her Attorney

_____

## CERTIFICATION

A copy of the foregoing was mailed, first class to the following counsel on

the date set forth above:

John J.Radshaw, Esq.
Howd & Ludorf
65 Wethersfield Ave.
Hartford, CT   06114

_____
KATRENA ENGSTROM

15

17