THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA SIMLER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | 3:02-CV-1565 (EBB) |
| | : | |
| EDWARD STRUZINSKY | : | |
| BRANFORD BOARD OF EDUCATION | : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Donna Simler ("Simler" or "Plaintiff"), brings this Complaint against Edward Struzinsky, the Chairman of the Branford Board of Education, ("Struzinsky"), and the Branford Board of Education (the Board). Simler is a former teacher in the Branford school system. The Complaint alleges violation of Plaintiff's right to due process, both procedural and substantive, and equal protection, each under the Fourteenth Amendment to the Constitution. It appears that the allegations against both Defendants meld together and they are certainly briefed as such. Therefore, the Court will analyze them together, except in the instances in their briefs where the parties seemingly separate them.

All moving papers having been filed, the Motion is ready for decision.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an

understanding of the issues raised in, and decision rendered on, this Motion.  The facts are culled from the Complaint, the memoranda of law and exhibits thereto, and the parties' Local Rule 56(a) Statements.

On May 15, 1998, Simler allegedly assaulted an ex-boyfriend. She was arrested and, accordingly, immediately suspended by the Board.  After an investigation, conducted by the Board, Simler was notified that the Branford school system intended to commence termination proceedings against her.  However, in lieu of the proposed termination proceedings, the parties entered into a Separation Agreement.  This Agreement provided that Simler was to be placed on paid leave through January 31, 1999, and from February 1 through June 30, 1999, she was to be placed on unpaid leave.  The Agreement also provided that Simler was required to submit an irrevocable letter of resignation, which she complied with by submitting such letter on November 12, 1998, effective June 30, 1999.  Finally, the Board agreed that it would pay Simler's contribution to the Teacher's Retirement Board, ("TRB"), from February 1 through June 30, 1999; however, "[u]nder no circumstances shall the board pay the teacher's TRB contribution after June 30, 1999."

On March 24, 1999, the Board approved an early retirement incentive (the "Plan") for all eligible staff, providing for the purchase of an additional three years of service for those who

2

applied and whose background met the appropriate criteria. Simler, one of 17 applicants, applied for inclusion in the Plan, but, on June 2, 1999, she was rejected for not having the appropriate number of years in the Branford School System. The remaining 16 applicants were accepted.

Plaintiff hired an attorney, who challenged the Board's decision and the method by which they determined not to include her in the Plan. Eventually, counsel removed his concerns to the State Teachers' Retirement Board of the State of Connecticut, which, in turn, forwarded it to the Attorney General for opinion. As of the last letter in Plaintiff's Exhibits, dated January 2, 2003, the Attorney General had not yet responded. Plaintiff's Exhibit 5. Plaintiff has not updated her submission with the status of the State's inquiry, so the Court cannot discern her present status as to the Plan.

In early September, 1999, the Board voted to seek revocation of Plaintiff's teaching certificates. The papers do not include who made the motion to the Board. In any event, Struzinsky, as Chairman, signed the request to revoke based on Simler's alleged assault, leaving the scene of the assault, and subsequent arrest.

On January 10, 2001, the Connecticut Board of Education ("State Board") found probable cause to proceed against Simler's revocation and assigned the matter to a Hearing Officer. On December 19, 2001, after days of hearings and a plethora of

briefings, the Hearing Officer recommended revocation and, after a public hearing on February 6, 2002, the State Board adopted all of the reasons set forth in the Hearings Officer's report and revoked all of Simler's teaching certificates.

Following Plaintiff's Motion for Reconsideration, the Hearing Officer again recommended revocation in his second report, dated December 16, 2002. As to Simler's claim of acquittal of the criminal charges, the Hearing Officer wrote: "The Respondent takes the position that she was exonerated of criminal wrongdoing and that should preclude the Commissioner from seeking revocation of her licenses.  Neither party presented any evidence of what charges were filed against the Respondent or what the [sic] resolution may have taken place.  Even assuming that the Respondent went to trial and was found 'not guilty' does not mean 'innocent'.  No one knows what a jury or Judge may have found lacking in an attempt to prove a violation beyond a reasonable doubt . . . [here] [t]he issues are different.  The standard of proof is different.  The types of evidence are different.  Most importantly, the public interest to be protected is different."  Defendant's Exhibit E at 15-16.  In any event, the Hearing Officer had been provided with a multitude of evidence, non-related to the criminal charges, and wrote his recommendation in large part on said non-related evidence. Defendant's Exhibit E.

4

On February 5, 2003, the State Board again voted to revoke Simler's teaching certificates. This litigation followed

**LEGAL ANALYSIS**

I.  **The Standard of Review**

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also* Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. However, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d. 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965 (1992); <u>Heilweil v. Mt. Sinai Hospital</u>, 32 F.3d 718, 721 (2d Cir. 1994). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Anderson</u>, 477 U.S. at 255, *quoted in* <u>Keeney v. City of New London</u>, 196 F.Supp.2d 190, 195 (D.Conn. 2002).

"[T]he requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original). When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. <u>Sologub v. City of New York</u>, 202 F.3d 175, 178 (2d Cir. 2000).

**II.  The Standard As Applied**

**A.  The Plan**

Defendants postulate that the statute of limitations has run on any and all claims regarding the Plan. The Court agrees. The undisputed facts are:

> Simler was given official notice of the Plan on or about March 24, 1999.
>
> The Board approved the Plan to include the 16 most senior individuals on June 1, 1999.
>
> Simler knew, on June 22, 1999 that she was not approved to participate in the Plan because she did not meet the Plan requirements.
>
> Simler commenced this action on September 4, 2002.

In Wilson v. Garcia, 471 U.S. 261 (1985), the Supreme Court recognized that "[a]lmost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." *Id.* at 272-73. Accordingly, the Wilson Court determined that, in the federal interests in uniformity, certainty, and the minimization of unnecessary litigation, a singular characterization of Section 1983 claims was required. *Id.* at 277. Resultingly, Wilson characterized Section 1983 claims as general personal injury actions and bid each court to select a limitations period in accord with that view. *Id.* at 267-69 & nn. 13 & 16.

In Connecticut, courts have determined that Section 1983 claims are governed by the three-year statute of limitations found in Conn.Gen.Stat. Section 52-577. Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994). *Accord* Williams v. Walsh, 558 F.2d 667, 670-71 (2d Cir. 1977); Members of Bridgeport Housing Authority Police Force v. Bridgeport, 85 F.R.D. 624, 637 (D.Conn.

1980); *see also* Orticelli v. Powers, 197 Conn. 9, 16 (1985).

Applying this three-year limitations period, the undisputed facts set forth above plainly disallow any or all claims regarding the Plan. Inasmuch as Plaintiff had all the requisite information as to her rejection from the Plan on June 22, 1999, she had until June 22, 2002 by which to commence this litigation. She failed to do so. Accordingly, that part of Defendants' Motion seeking summary judgment on any or all claims regarding the Plan is hereby GRANTED.[1]/

### B. The Revocation

#### 1. Substantive Due Process

Inasmuch as Plaintiff does not respond to Defendant's contention that she has been given all procedural due process required in the revocation hearings, the Court finds such and turns to Plaintiff's claim of a failure of substantive due process.

Plaintiff claims that Defendants, by initiating the revocation proceedings, have violated her right to substantive due process. "The touchstone of [substantive] due process is

---

[1]/ Curiously, in that part of her Memorandum challenging the statute of limitations defense with regard to the Plan, Plaintiff asserts that she "is required to exhaust administrative appeals through the Teacher's Retirement Board prior to filing an action for her lost retirement benefits", acknowledging that she has not done so. Memorandum at p. 6. Initially, if this were the case, then her claim would automatically be dismissed. However, exhaustion of administrative remedies is not required for a Section 1983 claim, which is the statute under which Plaintiff commenced this litigation. Patsy v. Florida Board of Regents, 457 U.S. 496, 512 (1981).

protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974). In other words, the substantive due process guarantee protects against government power which is arbitrarily and oppressively exercised. *See, e.g.*, Daniels v. Williams, 474 U.S. 327, 331 (1986). Supreme Court cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be "arbitrary in a constitutional sense." Collins v. Harker Heights, 503 U.S. 115, 129 (1992). In Collins, for example, the Supreme Court reiterated that the due process clause was intended to prevent government officials "'from abusing [their] power, or employing it as an instrument of oppression.'" *Id.* at 126 *quoting* DeShaney v. Winnebago County Dept. Of Social Services, 489 U.S. 189, 196 (1989).

    This cognizable level of executive abuse of power is that which "shocks the conscience." First announced in Rochin v. California, 342 U.S. 165, 172-73 (1952), the Court found that the forced pumping of a suspect's stomach was enough to offend substantive due process as conduct "that shocks the conscience" and violates "decencies of civilized conduct." *See also* Breithaupt v. Abram, 352 U.S. 432, 435 (1957)(conduct that "'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" would violate substantive due process). "While the

9

measure of what is conscience shocking is no calibrated yard stick, it does, as Judge Friendly put it, 'poin[t] the way.'" County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) *quoting* Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir), *cert. denied*, 414 U.S. 1033 (1973).   The way is not pointed out in this case.

Measuring the Defendants' conduct herein against these high standards, there is no doubt that the request to revoke Simler's teaching certificates, initially based on an allegedly brutal assault and its aftermath, which had been investigated in depth prior to the request, was neither arbitrary, capricious, nor shocking to the conscience in any sense.  "Such a course of conduct on the part of a school board responsible for the public education of students within its jurisdiction . . . can scarcely be described as arbitrary."  Harrah Independent School District v. Martin, 440 U.S. 194, 199 (1979)(nonrenewal of teacher's contract because of failure to earn required college credits not deprivation of substantive due process or of equal protection).

While there is no doubt that Plaintiff had a protected property right in her teaching certificates, they were not taken from her in any manner forbidden by the due process clause of the Fourteenth Amendment.  Thus, Plaintiff's claim of a denial of substantive due process under these circumstances is wholly untenable.

   2.  **Equal Protection**

10

The Equal Protection Clause requires that the government treat all similarly situated people alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Although the prototypical equal protection claim involves discrimination against people based on their membership in a protected class, such guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of the government. *See, e.g.*, LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980). The Supreme Court recently affirmed the validity of such "class of one" claims "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). In this Circuit, to prevail on her class-of-one claim of the Board's selective enforcement of the request to revoke, Simler must show both "(1) that she was treated differently from other similarly situated individuals, and (2) that such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Harlen Associates v. The Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) *quoting* LaTrieste Restaurant & Cabaret v. Village of Port Chester, 40 F.3d 587, 590

(2d Cir. 1994). As to "similarly situated", Plaintiff must point to comparators whose circumstances bear a reasonably close resemblance of facts and circumstances; however, the circumstances need not be identical. Graham v. Long Island Railroad, 230 F.3d 34, 40 (2d Cir. 2000).

Plaintiff's claim falls on the initial prong of Harlen Associates, in that she has not met her burden of showing that she was treated differently from others similarly situated. This is because she has failed, in the first place, to show any other individuals whose circumstances bear a close resemblance to hers, much less who were treated differently. Her Complaint is devoid of any such identification. The two persons she identified during discovery as being similarly situated are two former colleagues, Jerry Friedman and Harold Von Hole, neither of whom bears the reasonably close resemblance required in this Circuit.

Friedman stood accused of assaulting a student on school property, during school hours. He was placed on paid administrative leave while an investigation was pending. In performing an investigation of Friedman, just as they did of Simler, the Superintendent of Schools determined that factual questions existed as to whether Friedman was the protagonist or the victim acting in self-defense; therefore the Superintendent determined that to seek termination was inappropriate. Accordingly, Friedman was suspended for three days.

The investigation of Simler revealed no such question; rather it reported a brutal assault on a prone man and leaving the scene of the alleged assault. There was never a question of self-defense.  This Court agrees with the State's Hearing Officer that it is impermissible to take Plaintiff's acquittal, several years later, into account for its determination of "similarly situated."  One must look to the facts and circumstances as were known to the Board when it initiated revocation proceedings, not years later through the rose-colored lens of hindsight.

Von Hole was arrested, along with other members of his family, for allegedly operating a marijuana factory out of his home.  He, too, was suspended with pay pending an internal investigation.  However, during the investigation, Von Hole's teaching certificate expired.  The investigation ceased, inasmuch as the expired certificate was sufficient for automatic termination.

Save for the fact that both were arrested and put on paid leave, there is utterly no legally cognizable similarity between Von Hole and Plaintiff for purposes of an equal protection claim.

Although nowhere in her Complaint, in her summary judgment papers she asserts that "the State Education Department acknowledged that no teacher had been referred for revocation unless there was some record of previous disciplinary action <u>within the school system</u> itself, or unless there was a criminal

13

<u>conviction</u>.  Exhibit 9 [sic]" (emphasis in original). That is not what Exhibit **7** (the correct exhibit number) provides.  Instead, it is silent as to any mention of a **referral for revocation**, or possible reasons therefore.  Thus, it defies logic to make such a quantum leap from this singular document.  Rather, in response to a "directive" from the CHRO (which has not been provided to this Court), the Attorney General's Office, in a letter dated four years after the events at issue herein, provides the names of three individuals whose teachers' licenses "were revoked or not renewed" and, in the opinion of one Assistant Attorney General, are "similarly situated" to Plaintiff.  However, the Court notes that Plaintiff's claims now pending before the CHRO are against the Connecticut State Board of Education, not the Defendants herein.  Therefore, even if these individuals are "similarly situated", they are so in the context of a suit against the State, not one Board of Education.  For this reason also, Exhibit 7 is of no benefit to Plaintiff.  She has failed to find comparators within the Branford School System.  What she is able to do before the CHRO in litigation against the State is of no moment to this Court.

## **CONCLUSION**

No reasonable jury, applying the facts to the law as set forth herein, could find in favor of the Plaintiff at a trial of this matter.  Accordingly, Defendants' Motion for Summary

14

Judgment [Doc. No. 32] shall be, and hereby is, GRANTED.[2]/

                                              SO ORDERED

                                        _____

                                        ELLEN BREE BURNS

                                        SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this ___ day of March, 2005.

---

[2]/ The Court would grant summary judgment for yet another reason. In Kelley v. Bonney, 221 Conn. 549 (1992), the Supreme Court of this State held that, "[t]he detailed procedures, which ensure the reliability of teacher decertification proceedings, and the compelling public policy concern for the protection of school age children persuade us that the decertification proceedings before the state board of education [are] quasijudicial in nature, and that any statements made as a requisite step in those proceedings [are] absolutely privileged." *Id.* at 571. This absolute privilege also covers the initial request to revoke. *Id.* Plainly, then, Defendants' actions are protected by the doctrine of absolute privilege.